**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

OMAR SHARIF,

    Plaintiff,

    v.

MIQ LOGISTICS, INC.,

    Defendant.

CIVIL ACTION NO. 3:CV-13-2983

(JUDGE CAPUTO)

-------------------------------------------------------

MIQ LOGISTICS, INC.,

    Third-Party Plaintiff,

    v.

DIAMOND STAFFING SERVICES, INC.,
and TRI-DIAMOND STAFFING d/b/a
DIAMOND STAFFING,

    Third-Party Defendants.

## **MEMORANDUM**

Presently before the Court is Defendant MIQ Logistics, Inc.'s ("MIQ") Motion to Dismiss Plaintiff Omar Sharif's ("Sharif") Claims for Punitive Damages. (Doc. 12.) For the reasons that follow, the motion to dismiss will be denied.

### **I. Background**

The facts as set forth in the Amended Complaint are as follows:

Sharif is an African-American male. (*Am. Compl.*, ¶ 13.)  Sharif was hired by MIQ through a staffing agency as a warehouse worker in Jersey City, New Jersey. (*Id*. at ¶ 14.) MIQ controlled Sharif's daily work assignments and possessed the power to counsel, discipline, and terminate him. (*Id*. at ¶ 15.)

During his employment, Sharif was repeatedly called racial slurs for African-Americans, such as "melanzana" and "eggplant", by his co-worker Dennis. (*Id*. at ¶ 16.)

Sharif asked Dennis to stop the derogatory comments, but Dennis refused. (*Id*. at ¶¶ 17-18.)

Sharif repeatedly complained about the racial slurs to Supervisor Jose and General Manager Matt. (*Id*. at ¶ 19.)  On each occasion, Sharif was told that his complaints would be looked into. (*Id*. at ¶ 20.)  Nevertheless, MIQ never conducted an investigation or instituted remedial measures to stop Dennis' comments. (*Id*. at ¶ 21.)

On November 5, 2011, MIQ relocated Sharif's work location to a facility in Tannersville, Pennsylvania. (*Id*. at ¶ 22.) Dennis was also relocated to that facility, and MIQ promoted Dennis to a supervisory team leader position. (*Id*. at ¶¶ 23-24.)  Dennis became Sharif's team leader/direct supervisor. (*Id*. at ¶ 25.)  Dennis thereafter developed a pattern of continuous hostility towards Sharif. (*Id*. at ¶ 26.)  Sharif again complained to Supervisor Jose and General Manager Matt about Dennis' conduct, and he also requested that a mediation be scheduled to address the racially hostile work environment created by Dennis. (*Id*. at ¶ 27.)  Despite assurances that they would look into it, Supervisor Jose and General Manager Matt failed to do anything to stop the harassment. (*Id*. at ¶¶ 28, 30-31.)

Shortly after becoming Sharif's team leader, Dennis began micro-managing his work and assigning him tasks unfairly. (*Id*. at ¶ 32.)  For example, Dennis assigned Sharif to unload delivery trucks without any assistance when such a task typically requires the assistance of two to three additional workers. (*Id*. at ¶ 35.)  Sharif was also regularly assigned to operate defective machinery. (*Id*. at ¶ 36.)  This was done out of racial animus and in retaliation for Sharif lodging complaints against Dennis. (*Id*. at ¶ 33.)  Again, despite complaints, MIQ failed to prevent Dennis from harassing and retaliating against Sharif. (*Id*. at ¶ 34.)

On February 23, 2012, Sharif complained to General Manager Matt and requested a sit down to discuss Dennis' conduct towards him. (*Id*. at ¶ 37.)  General Manager Matt apologized to Sharif and indicated that he would talk to Dennis. (*Id*. at ¶ 38.)  Following his

conversation with General Manager Matt, Sharif immediately contacted the staffing agency through which he had obtained employment with MIQ. (*Id*. at ¶ 39.) The staffing agency responded that it was aware that "[MIQ] does not like him." (*Id*. at ¶ 40.)

On February 26, 2012, Sharif was fired. (*Id*. at ¶ 41.) MIQ refused to provide him with a reason for his termination. (*Id*.)

Based on the foregoing and after exhausting all administrative remedies, Sharif commenced the instant action on December 12, 2013. (Doc. 1.) On March 4, 2014, Sharif filed a nine-count Amended Complaint. (Doc. 11.) The Amended Complaint asserts claims for violations of Title VII of the Civil Rights Act of 1964 (Counts I-III), the Pennsylvania Human Relations Act (Counts IV-VI), and 42 U.S.C. § 1981 (Counts VII-IX). Among other relief sought by Sharif, he seeks punitive damages for the purported violations of Title VII and § 1981. (*Am. Compl.*, Wherefore Clause (E).)

On March 18, 2014, MIQ filed the instant motion to dismiss. (Doc. 12.) MIQ seeks dismissal of Sharif's claims for punitive damages. Sharif filed a brief in opposition on April 3, 2014. (Doc. 14.) MIQ did not file a reply brief in further support of its motion. The motion to dismiss is thus fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of the plaintiffs' claims, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if the plaintiffs are entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether plaintiffs will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the counterclaim, a counterclaim plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

As noted, Sharif seeks punitive damages on his claims for race discrimination under Title VII and 42 U.S.C. § 1981. MIQ argues that the Amended Complaint fails to allege facts that it acted with the requisite state of mind to warrant the imposition of punitive damages. The motion to dismiss will be denied.

A plaintiff may seek punitive damages for claims under Title VII and § 1981. *See Johnson v. Fed. Express Corp.*, - - - F. Supp. 2d - - -, 2014 WL 509152, at *14 (M.D. Pa. Feb. 10, 2014) (citing *Mangan v. Commonwealth Med. Coll.*, No. 11-2277, 2012 WL 2018270, at *3 (M.D. Pa. June 5, 2012); *Hanes v. Columbia Gas of Pa.*, No. 7-1706, 2008 WL 3853333, at *5 (M.D. Pa. Aug. 14, 2008)). "The standard for punitive damages is the same under § 1981 and Title VII." *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th

Cir. 2013) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997)); *Goodwin v. Fast Food Enters. No. 3, LLP*, No. 10–23, 2012 WL 1739830, at *5 n.1 (W.D. Pa. May 16, 2012) ("any case law construing the punitive damages standard set forth in Title VII cases is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim").  A plaintiff may be entitled to punitive damage under these statutes when his or her employer engages in discriminatory practices with "malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999).  According to the Supreme Court, "[t]he terms 'malice' and 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535, 119 S. Ct. 2118.

Here, Sharif alleges that he repeatedly complained to his supervisors and MIQ's upper management about the racially hostile treatment he was subject to in the workplace. He further contends that after he lodged these complaints he was reassigned to work under the supervision of the employee making the derogatory comments.  And, subsequent to this reassignment, Sharif claims he was subject to retaliatory treatment with respect to the assignment of job duties and tasks.  Sharif also asserts that he was terminated because he informed his supervisors of the racially hostile work environment.  The Amended Complaint additionally states that MIQ's actions were done with reckless indifference to his rights. Accordingly, Sharif alleges facts supporting a discrimination claim and that MIQ performed its purportedly discriminatory action with the required state of mind to justify the imposition of punitive damages. *See, e.g., Pierce-Schmader v. Mount Airy Casino and Resort*, No. 13-1141, 2013 WL 4854524, at *7 (M.D. Pa. Sept. 11, 2013).  In light of these well-pled allegations, dismissal of Sharif's request for punitive damages without the development of the factual record through discovery would be premature. *See, e.g., Mangan v.*

*Commonwealth Med. Coll.*, No. 11-2277, 2012 WL 2018270, at *3 (M.D. Pa. June 5, 2012)

## IV. Conclusion

For the above stated reasons, MIQ's motion to dismiss Sharif's request for punitive damages for the alleged violations of Title VII and § 1981 will be denied.


| April 23, 2014 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
|  | United States District Judge |